CHRISTOPHER C. STONEBACK
GREGORY F. DORRINGTON
CROWLEY FLECK PLLP
500 Transwestern Plaza II
490 North 31st Street
P. O. Box 2529
Billings, MT  59103-2529
Telephone:  (406) 252-3441
Fax:  (406) 259-4159
Email:  cstoneback@crowleyfleck.com
        gdorrington@crowleyfleck.com

JOHN E. BLOOMQUIST
RACHEL A. KINKIE
RICHARD C. TAPPAN
BLOOMQUIST LAW FIRM, P.C.
Diamond Block, Suite 100
44 West 6th Avenue
P.O. Box 799
Helena, MT  59624-0799
Telephone:  (406) 502-1244
Fax: (406) 422-4353
Email:  jbloomquist@helenalaw.com
        rkinkie@helenalaw.com

*Attorneys for Wonder Ranch, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | | |
|---|---|---|
| WONDER RANCH, LLC, | ) | Cause No.  CV-14-57-BU-SEH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **WONDER RANCH, LLC'S** |
| | ) | **RESPONSE TO PUBLIC** |
| UNITED STATES OF AMERICA, U.S. | ) | **LAND/WATER ACCESS** |
| DEPARTMENT OF AGRICULTURE, | ) | **ASSOCIATION, INC.'S** |
| acting through the U.S. Forest Service, and | ) | **MOTION TO INTERVENE** |
| Melany Glossa, in her capacity as | ) | |
| Supervisor of the Beaverhead-Deerlodge | ) | |
| National Forest, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| UNITED STATES OF AMERICA, U.S. | ) | |
| DEPARTMENT OF AGRICULTURE, | ) | |
| acting through the U.S. Forest Service, | ) | |

and Melany Glossa, in her capacity as        )
Supervisor of the Beaverhead-Deerlodge      )
National Forest,                             )
                                             )
                  Counterclaimants,        )
                                             )
        vs.                             )
                                             )
WONDER RANCH, LLC,                           )
                                             )
                  Counterdefendant.       )
            _____

# TABLE OF CONTENTS

BACKGROUND ...........................................................................................1

I. Factual Background...........................................................................1

A. Trail Description and History of Property Ownership .........................1

B. History of Permissive Public Use ....................................................2

C. Forest Service's Attempts to Acquire a Public Easement Through the Wonder Ranch ...............................................................................4

D. Negotiations for Trail Relocation and Placement of Additional Signs and Unlocked Gates at Wonder Ranch ....................................................5

II. Procedural Background......................................................................7

STANDARD OF REVIEW ...........................................................................8

LEGAL ARGUMENT .................................................................................8

I.   The Court Should Reject the Forest Service's Impermissible Attempt to Circumvent the Court's Deadline for Joining Parties ....................................8

II.  The Court Should Deny PLWA's Motion to Intervene Because It Is Untimely  ...............................................................................................10

A. PLWA's Motion Is Untimely Because It Was Filed Fourteen Months After Wonder Ranch Filed Its Complaint and Shortly Before Close of Discovery.............................................................................................10

B. Granting PLWA's Motion to Intervene Will Cause Substantial Prejudice to Wonder Ranch....................................................................12

C. PLWA's Motion Is Untimely Because PLWA Failed to Identify the Reason for, and Length of, the Delay.........................................................15

III. PLWA Cannot Satisfy the Requirements of F.R.Civ.P. 24(a), Which Are Necessary to Intervene as a Matter of Right in this Action...........................17

A. PLWA Does Not Have a Significant Protectable Interest in this Action Because Resolution of the Action Will Not Actually Affect PLWA's Interests ...................................................................................18

B. Because PLWA Does Not Have a Significant Protectable Interest in this Litigation, Disposition of this Action Will Not, as a Practical Matter, Impair PLWA's Ability to Protect Their Asserted Interest ....................20

C. PLWA's Motion to Intervene as a Matter of Right Is Untimely .........20

D. PLWA's Motion to Intervene Should Be Denied Because PLWA Failed to Rebut the Presumption that the Forest Service Will Adequately Represent PLWA's Interests ..................................................................20

IV. PLWA Cannot Satisfy The Requirements of F.R.Civ.P. 24(b), Which Are Necessary For Permissive Intervention .......................................................25

A. The Court Should Deny PLWA's Motion For Permissive Intervention Even if the Court Determines PLWA Met All Requirements for Permissive Intervention ..........................................................................26

B. The Court Should Deny PLWA's Motion for Permissive Intervention Because PLWA Failed to Allege Independent Jurisdictional Grounds ...27

C. The Court Should Deny PLWA's Motion for Permissive Intervention Because it Is Untimely.............................................................................28

CONCLUSION .........................................................................................................28

## TABLE OF AUTHORITIES

## <u>CASES</u>

*Alaniz v. Tillie Lewis Foods*,
    572 F.2d 657 (9th Cir. 1978) ......................................................................13

*Allen v. Bedolla*,
    787 F.3d 1218 (9th Cir. 2015) ....................................................8, 10, 20, 23

*Am. Civil Liberties Union of Minnesota v. Tarek ibn Ziyad Acad.*,
   643 F.3d 1088 (8th Cir. 2011) ........................................................................11

*Arakaki v. Cayetano*,
   324 F.3d 1078 (9th Cir. 2003) .......................................................18, 21, 23

*California ex rel. Lockyer v. United States*,
   450 F.3d 436 (9th Cir. 2006) .........................................................................23

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
   647 F.3d 893 (9th Cir. 2011) ................................................................18, 20

*Cummings v. United States*,
   704 F.2d 437 (9th Cir. 1983) .............................................................11, 13

*Dep't of Fair Employment & Hous. v. Lucent Technologies, Inc.*,
   642 F.3d 728 (9th Cir. 2011) ..........................................................................24

*Donnelly v. Glickman*,
   159 F.3d 405 (9th Cir. 1998) ...................................................................25, 26

*Forest Conservation Council v. U.S. Forest Serv.*,
   66 F.3d 1489 (9th Cir. 1995) .......................................................................22

*Freedom from Religion Found., Inc. v. Geithner*,
   644 F.3d 836 (9th Cir. 2011) .......................................................22, 23, 24

*Hawaii-Pac. Venture Capital Corp. v. Rothbard*,
   564 F.2d 1343 (9th Cir. 1977) .....................................................................26

*League of United Latin Am. Citizens v. Wilson*,
   131 F.3d 1297 (9th Cir. 1997) ................................ 10, 11, 13, 16, 17, 27, 28

*Low v. Altus Fin. S.A.*,
   44 F. App'x 282 (9th Cir. 2002) ................................................................23

*Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC*,
   485 F.3d 1006 (8th Cir. 2007) .............................................................11, 12

*Perry v. Proposition 8 Official Proponents*,
    587 F.3d 947 (9th Cir. 2009) .................................. 17, 21, 24, 25, 26, 27, 28

*Peruta v. Cnty. of San Diego*,
    771 F.3d 570 (9th Cir. 2014) .......................................................................10

*Prete v. Bradbury*,
    438 F.3d 949 (9th Cir. 2006) .........................................................21, 23, 24

*Smith v. Marsh*,
    194 F.3d 1045 (9th Cir. 1999) ...............................................................11, 16

*Southmark Corp. v. Cagan*,
    950 F.2d 416 (7th Cir. 1991) .......................................................................11

*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) .......................................................................21

*Spangler v. Pasadena City Bd. of Ed.*,
    552 F.2d 1326 (9th Cir. 1977) ..................................................................9, 27

*Tri-State Generation v. New Mexico Pub. Regulation Comm'n*,
    787 F.3d 1068 (10th Cir. 2015) ...................................................................13

*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004) ......................................................8, 10, 11, 17

*United States v. Blaine Cnty., Montana*,
    37 F. App'x 276 (9th Cir. 2002) .........................................................12, 17

*United States v. City of Los Angeles, Cal.*,
    288 F.3d 391 (9th Cir. 2002) ...............................................................18, 24

*United States v. State of Or.*,
    913 F.2d 576 (9th Cir. 1990) .......................................................................12

*United States v. State of Wash.*,
    86 F.3d 1499 (9th Cir. 1996) .......................................................................13

*United States ex rel. Richards v. De Leon Guerrero*,
    4 F.3d 749, 756 (9th Cir.1993) ...................................................................27

## **STATUTES AND RULES**

F.R.Civ.P. 24(a) ............................................................................................17

F.R.Civ.P. 24(b) ............................................................................................25

28 U.S.C. §§ 1330-1340 ................................................................................27

28 U.S.C. § 1441 ...........................................................................................27

Plaintiff and Counterdefendant Wonder Ranch, LLC ("Wonder Ranch") submits its response to Defendant-Intervenor Applicant Public Land/Water Access Association, Inc.'s ("PLWA") motion to intervene.  PLWA's motion should be denied because it is untimely and prejudicial to Wonder Ranch.  Furthermore, Defendant and Counterclaimant United States of America, et al. ("Forest Service") adequately represent PLWA's interests in this lawsuit.  Thus, Wonder Ranch respectfully requests the Court deny PLWA's motion.

## BACKGROUND

Given PLWA's asserted interest in this litigation, its motion to intervene must be analyzed within the context of the events giving rise to the instant dispute.  Accordingly, a brief summary of pertinent facts is included below.

**I.    Factual Background**

A.   Trail Description and History of Property Ownership

Wonder Ranch owns an 80-acre tract in the foothills of the Madison Range, near Cameron, Montana (the "Property").  The north portion of the Property is bisected by Indian Creek, which flows from the Lee Metcalf Wilderness.  There are two private cabins on the Property.  A trail enters the Property from the west, crosses a bridge, passes between the cabins and the creek, and meanders through the Property before reaching the wilderness boundary on the east.  Exh. 1 (Aerial

Imagery).  The public uses this trail by permission and accommodation of Wonder
Ranch.

Denny Wonder homesteaded Wonder Ranch in the 1930s.  The United
States patented the property to Wonder on October 1, 1936 and the land passed by
*mesne* conveyances to William Hudson on February 1, 1968.  Doc. 16, ¶¶ 1-4.
From 1968 to the present, the Property has been owned and controlled by the
Hudson Family, including William and Betty Hudson, their three children—
Andrew Hudson, Chris Hudson and Eugenia (Hudson) King—and now by Wonder
Ranch, LLC, which is controlled by Chris and Eugenia (collectively "the
Hudsons").  *Id*. ¶¶ 4-10.

B.   History of Permissive Public Use

Although there is no easement for access through the Property, Wonder
Ranch and its predecessors have always permitted government personnel and other
users to cross the Property to access public lands.  Beginning in the 1930s, Denny
Wonder and his family permitted ranchers and other users to cross the Property
consistent with local customs of accommodating neighborly use.  Exh. 2 (Clarice
Wonder Aff., ¶¶ 21-22); Exh. 3 (Kathryn Wonder Brooks Aff., ¶ 15); Exh. 4
(Vergil Lindsey dep., p. 141).  Forest Service records indicate that subsequent
landowners were similarly accommodating.  For example, a letter from District
Ranger Blaine Tennis notes that Arthur Roth, an intervening owner of Wonder

2

Ranch, has always "been very cooperative in allowing us to cross [Wonder Ranch Property] to get to the National Forest," despite the lack of easement.  Exh. 5 (1960 Tennis Letter).

Since acquiring ownership in 1968, the Hudsons have continued this custom of accommodating permissive use of the trail through Wonder Ranch.  *See* Exh. 6 (Chris Hudson dep., p. 194).  The Hudson's hospitality and accommodation towards users of the trail is well known, as they developed friendships with the outfitters, helped ranchers move their livestock to pasture in the mountains, and generally had cordial interactions with trail users, going so far as to invite them in for drinks and dinner on occasion.  *See, e.g., id*. (Hudson dep., pp. 143-155); Exh. 7 (Stan Klaumann Aff., ¶¶ 9-10, 19-20); Exh. 8 (WR Journal Accommodation Excerpts).  The Hudsons recognize the importance of public access up Indian Creek and, for five decades, they have permitted public passage through Wonder Ranch.  To declare to the public the permissive nature of the access through the Property, in the 1970s, the Hudsons placed large wooden signs on the east and west Property lines notifying users that they were entering private property and to "please stay on the trail to Forest boundary ¼ mi."  Exh. 9 (Wooden Signs); Exh. 10 (WR Journal Sign Excerpt); Exh. 11 (Lloyd Smith, Jr. Aff., ¶ 14); Exh. 7 (Klaumann Aff., ¶ 8).

3

C.   <u>Forest Service's Attempts to Acquire a Public Easement Through the Wonder Ranch</u>

The Forest Service has consistently recognized there is no easement for access through the Wonder Ranch Property and that access is controlled by and provided at the "will of the landowner." Exh. 12 (1972 Lindsey Memo); Exh. 13 (1973 FONSI); Exh. 14 (2004 Petroni Letter). Since at least the 1960s, the Forest Service has requested an easement from Wonder Ranch, and each time its owners declined. *See, e.g.*, Exh. 5; Exh. 15 (1980 Lindsey Memo); Exh. 16 (1982 Dvorak Memo). Forest Service documents establish that although the Hudsons never granted an easement, they have not denied access. Exh. 12.

In the early 1980s, the Forest Service acknowledged its lack of legal access by initiating condemnation proceedings for a right-of-way across Wonder Ranch. Exh. 17 (Condemnation Report). As part of that effort, District Ranger Vergil Lindsey (now a PLWA member), drafted a document stating public use of the trail "is presently occurring at the will of the landowner." Exh. 13. The condemnation effort stalled in 1985, but Wonder Ranch continued to permit public access across its property. In 2004, District Ranger Mark Petroni wrote that although "[n]o easement exists across the Wonder Ranch," public access was provided by a "'gentleman's agreement.'" Exh. 14.

4

D.   <u>Negotiations for Trail Relocation and Placement of Additional Signs and Unlocked Gates at Wonder Ranch</u>

In the 1990s and 2000s, the number of people, horses, and dogs permissively passing through the Wonder Ranch Property had increased to the point that the Hudsons grew concerned about potential liability and the risk of personal injury on their property.  *See* Exh. 6 (Hudson dep., pp. 226-227, 242); Exh. 18 (Eugenia King dep., 94-95).  During this period, the Hudsons discussed alternate routes through the Property with the Forest Service.  Rather than close the trail to public use due to liability concerns, the Hudsons offered to pay to relocate the trail *and* provide additional public access across the south portion of their property, opening the South Indian Creek drainage to public use.  *See* Exh. 19 (Escrow and Easement Agreements).  In 2009, the Hudsons offered the Forest Service an easement agreement that would have granted public access to main Indian Creek and South Indian Creek.  *Id*.  The Forest Service declined to execute the agreement.

During those discussions with the Forest Service, the liability risk remained; thus, in fall 2007, the Hudsons placed additional signs at the Property lines, which read:  "NOTICE: This trail crosses private property for the next .25 mile to the forest boundary.  Access is provided by gratuitous permission of the landowner.  The landowner makes no guarantee as to the safety of the property and accepts no liability to persons entering the property."  Exh. 20 (Gratuitous Use Signs).  Wonder Ranch posted these signs for liability reasons and to reiterate that access

across Wonder Ranch was by permission.  Exh. 6 (Hudson dep., pp. 238-239);

Exh. 18 (E. King dep., pp. 94-95); Exh. 21 (Frank-Paul King dep., pp. 171-173).

In August 2009, the Hudson's installed gates across the trail on the east and

west boundaries of the Property and posted signs on the gates which read: "Please

No Riders[.]  All horses must be led.  All dogs must be on leash[.]  Thank you."[1]

Exh. 22 (Gate Photograph); Exh. 23 (WR Journal Gate/Sign Excerpt).  The gates

and signs were installed to reduce the risk of danger to the public in crossing the

Wonder Ranch Property, as there had been various incidents and dangerous

encounters involving unleashed dogs and horses in front of the Wonder Ranch

cabins where there is a steep embankment, and near the bridge over Indian Creek,

which has no safety railings.  Exh. 6 (Hudson dep., pp. 242-243); *see also* Exh. 21

(FP. King dep., pp. 106-107; 159-160).  The gates have never been locked,

generally remain open, and were never intended to discourage public use.

The Forest Service ultimately declined to continue discussions regarding

alternate routes and objected to the signs posted on the Wonder Ranch Property.

*See* Exh. 24 (Statement of Interest).  On September 1, 2011, the Forest Service

recorded a "Statement of Interest" claiming a 20-foot wide easement across the

Wonder Ranch Property.  *Id.*

---

[1]     Wonder Ranch subsequently removed these signs.  Exh. 18 (E. King dep., p. 100).

Nevertheless, Wonder Ranch has continued to permit public access across its

Property.  Moreover, protecting public access remains central to the Hudsons' land

ethic and they take seriously their role as stewards of public access to nearby

public lands.  In an open letter to the Madison Range community, published on

October 2, 2014, the Hudsons wrote, in part:

> Ever since our family came to Montana in '68 to make a home at
> Wonder Ranch, our mother, Betty Hudson, made sure we understood
> the importance of being good stewards of the land.  Ensuring that our
> friends, neighbors, and members of the public have access to the
> public lands in the Indian Creek drainage is an important part of that
> stewardship and core to our family's values.  **Our commitment to
> public access and stewardship of the land remains strong today
> and shall always be so.**

Exh. 25 (Open Letter).

## II.     Procedural Background

Wonder Ranch initiated this lawsuit on August 29, 2014 by filing a

Complaint to Quiet Title.  Doc. 1.  The Complaint seeks an order quieting title to

the Wonder Ranch Property free and clear of any easement identified in the Forest

Service's Statement of Interest.  Doc. 1, ¶¶ 62-63.  The Forest Service answered on

December 8, 2014, and filed an Amended Answer and Counterclaim on February

13, 2015.  Docs. 9, 19.  The Forest Service's counterclaim seeks an order declaring

a public prescriptive right of way across Wonder Ranch.  Doc. 19, ¶¶ A-B.

7

PLWA filed its motion to intervene on October 15, 2015, nearly fourteen months after this litigation was initiated, and over eight months after the Forest Service filed its counterclaim.  Docs. 23-25.

## STANDARD OF REVIEW

The "party seeking to intervene bears the burden of showing that <u>all</u> the requirements for intervention have been met."  *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).  "Denial of a motion to intervene as of right is reviewed *de novo*, except for the timeliness prong which is reviewed for an abuse of discretion."  *Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th Cir. 2015).  "Denial of a motion for permissive intervention is reviewed for an abuse of discretion."  *Id*.

## LEGAL ARGUMENT

### I.     The Court Should Reject the Forest Service's Impermissible Attempt to Circumvent the Court's Joinder Deadline.

As an initial matter, PLWA's motion to intervene appears to be the result of the Forest Service's attempt to circumvent the Court's joinder deadline.  Pursuant to the Court's February 9, 2015 order, ("Scheduling Order"), "joinder of parties" was to occur on or before February 13, 2015.  Doc. 17.  The Court expressly ordered that "further . . . joinder of parties will not be permitted."  *Id*.  By soliciting PLWA to intervene in this action eight months after the deadline for joinder has passed, the Forest Service has attempted to circumvent the Court's order to the substantial prejudice of Wonder Ranch.

8

Joinder and intervention of additional parties are closely-related concepts. Joinder allows the original parties to include additional necessary parties by force of law; conversely, intervention allows additional parties to enter the action "on their own initiative." *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1328-29 (9th Cir. 1977).

PLWA did not seek intervention on its own initiative. According to PLWA President John Gibson, PLWA was "contacted in the last week of September 2015 by Mark Smith, the assistant U.S. attorney representing the United States Department of Agriculture in this case." Doc. 24-1. p. 5, ¶ 3. During that conversation, Gibson and Smith determined that "PLWA may introduce important testimony regarding the public's use of this trail that the USDA may be unable to obtain or introduce." *Id*., ¶ 5.

If the Forest Service determined that the PLWA was an indispensable party for purposes of establishing the alleged public prescriptive easement across Wonder Ranch, it should have joined PLWA by February 13, 2015. Instead, the Forest Service initiated contact with PLWA and solicited their untimely intervention eight months after the deadline for joinder had passed.

Allowing the Forest Service to circumvent the Court's Scheduling Order will substantially prejudice Wonder Ranch's legal rights, as detailed further below. That prejudice could have been avoided had the Forest Service joined PLWA in

9

February, as it was required to do.  The Court should reject the Forest Service's attempts to circumvent the Scheduling Order.

## II.   The Court Should Deny PLWA's Motion to Intervene As Untimely.

"A timely motion is required for the granting of intervention, whether as a matter of right or permissively."  *Allen*, 787 F.3d at 1222.  Timeliness is a "flexible concept" and "its determination is left to the district court's discretion."  *Alisal Water Corp.*, 370 F.3d at 921.  In the Ninth Circuit, timeliness is determined with reference to: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay."  *Peruta v. Cnty. of San Diego*, 771 F.3d 570, 572 (9th Cir. 2014).  "In considering those factors, however . . . <u>any substantial lapse in time weighs heavily against intervention</u>."  *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (emphasis added).  Each of the three timeliness factors supports denying PLWA's motion to intervene, and if the Court determines that PLWA's motion is not timely, it "need not reach any of the remaining elements of Rule 24."  *Id.*

> A.   <u>PLWA's Motion Is Untimely Because It Was Filed Fourteen Months After Wonder Ranch Filed Its Complaint and Shortly Before Close of Discovery.</u>

PLWA's motion is untimely because: (1) over a year has passed since Wonder Ranch filed its complaint; and (2) discovery is nearly closed.  Intervention

has been denied "at the pretrial stages when 'a lot of water [has] passed under ...

[the] litigation bridge.'" *Alisal Water Corp.*, 370 F.3d at 922 (quoting *Wilson*, 131

F.3d at 1303).  Indeed, the Ninth Circuit held that a motion to intervene filed

"fifteen months after commencement of the original litigation" was untimely.

*Smith v. Marsh*, 194 F.3d 1045, 1052-53 (9th Cir. 1999).  The Ninth Circuit's

precedent is consistent with decisions from other Courts of Appeals.  *See Med.*

*Liab. Mut. Ins. Co. v. Alan Curtis LLC*, 485 F.3d 1006, 1009 (8th Cir. 2007)

(denying motion to intervene filed "more than a year after this action was filed and

only shortly before the discovery deadline"); *see also Southmark Corp. v. Cagan*,

950 F.2d 416, 418 (7th Cir. 1991) (denying motion to intervene filed "fifteen

months after this action was filed"); *see also Am. Civil Liberties Union of*

*Minnesota v. Tarek ibn Ziyad Acad.,* 643 F.3d 1088, 1094 (8th Cir. 2011) (denying

motion to intervene filed "fourteen months" after complaint when parties had

"commenced written discovery and begun taking depositions").

Moreover, the Ninth Circuit has noted that denial of intervention may be

based "upon the district court's view that the intervention motion was untimely

because the date for cutoff of discovery was near." *Cummings v. United States*,

704 F.2d 437, 440 (9th Cir. 1983); *see also Marsh*, 194 F.3d at 1048 (motion to

intervene denied as untimely when "discovery was well under way"); *see also*

*Wilson*, 131 F.3d at 1303 (motion to intervene denied because "discovery had

proceeded for roughly nine months"); *see also United States v. Blaine Cnty., Montana*, 37 F. App'x 276, 278 (9th Cir. 2002) (motion to intervene untimely when "discovery had been closed with one narrow exception"); *see also Med. Liab. Mut. Ins. Co.*, 485 F.3d at 1009 (motion to intervene denied when filed "shortly before the discovery deadline").

Wonder Ranch filed its Complaint to Quiet Title in August 2014. Over the past fourteen months, Wonder Ranch and the Forest Service have worked diligently to adhere to the Court's Scheduling Order by filing final versions of pleadings, and disclosing fact witnesses and relevant experts in accordance with the Court's deadlines. Furthermore, Wonder Ranch and the Forest Service expect to complete written discovery and, with minor exceptions, all scheduled fact and expert witness depositions by the impending deadline of November 13, 2015. By waiting so long to file its motion to intervene and given that discovery is set to close in less than two weeks, PLWA's motion to intervene is untimely and should be denied.

B.   Granting PLWA's Motion to Intervene Will Cause Substantial
       Prejudice to Wonder Ranch.

Prejudice to existing parties is one of the "most important factors in determining timeliness." *United States v. State of Or.*, 913 F.2d 576, 588 (9th Cir. 1990). In weighing the timeliness of a motion to intervene, the Ninth Circuit has "emphasized the seriousness of the prejudice which results when relief from long-

12

standing inequities is delayed." *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659 (9th Cir. 1978). Prejudice may be found when "intervention would complicate the issues and prolong the litigation" or lead to "further delay and briefing." *United States v. State of Wash.*, 86 F.3d 1499, 1504-06 (9th Cir. 1996).

PLWA sought permission to intervene in this action just as discovery is due to close. If the Court grants PLWA's motion at this advanced stage of litigation, it would substantially prejudice Wonder Ranch's rights. The Ninth Circuit has noted that "the admission of a new party at the winding-down stages of discovery in litigation can have very serious consequences" to the existing parties. *Cummings*, 704 F.2d at 441 (J. Poole, dissenting); *see also Tri-State Generation v. New Mexico Pub. Regulation Comm'n*, 787 F.3d 1068, 1074-75 (10th Cir. 2015) (denying motion to intervene as untimely because "allowing intervention would burden the parties with additional discovery").

Although PLWA asserts it will "comply with the existing scheduling order," PLWA fails to explain how doing so is feasible at this late stage. Doc. 24, p. 7. The Ninth Circuit has recognized that granting motions for intervention "will have the inevitable effect of prolonging the litigation to some degree." *Wilson*, 131 F.3d at 1304.

Because the Forest Service solicited PLWA to intervene due to "concerns that the USDA might be limited in the evidence it could introduce," Wonder Ranch

13

presumes the PLWA will introduce new evidence the Forest Service has not

produced in discovery.  PLWA submitted declarations of three PLWA members

attesting to the public's alleged use of the trail at issue.  *See* Doc. 24-1 (PLWA's

Exhibits A-C).  If PLWA's motion is granted, some unknown number of PLWA

members would need to be deposed.[2]  Furthermore, one of the PLWA declarants

avers that the trail is used by numerous individuals in his community; thus, those

individuals may need to be deposed as well.  Doc. 24-1 at 9.  Additionally, Wonder

Ranch will need to submit written discovery requests to PLWA if it becomes a

party, and PLWA will need sufficient time to answer those requests.

Despite PLWA's assurances, it simply is not possible for PLWA to

intervene in this matter *and* comply with the existing Scheduling Order.  Wonder

Ranch cannot complete the Forest Service's existing written discovery requests

and scheduled depositions, and simultaneously discover all relevant information in

PLWA's possession by November 13, 2015.  Assuming that PLWA serves a reply

brief, it is unlikely the Court will resolve PLWA's motion before discovery closes.

If the Court grants PLWA's motion to intervene, the Court should vacate the

Scheduling Order and institute a new order that allows sufficient time for PLWA to

be subjected to the discovery process.  This necessarily means that Wonder Ranch

will be forced to expend additional time and resources on litigation that has been

---

[2]      At great expense, the parties have already conducted fourteen depositions to date, with nine
more scheduled or in the process of being scheduled.

proceeding for the past fourteen months.  All the while, Wonder Ranch's title will

continue to be unnecessarily clouded by the Forest Service's statement of interest.

Thus, granting PLWA's motion to intervene inevitably will prejudice Wonder

Ranch, delay resolution of the dispute and needlessly increase the costs of

litigation.

      C.   <u>PLWA's Motion Is Untimely Because PLWA Failed to Identify the
Reason for, and Length of, the Delay.</u>

PLWA failed to intervene at an earlier stage in these proceedings, even

though PLWA and its members have been aware of the nature of access across

Wonder Ranch for a long time.  As PLWA member Vergil Lindsay recognized,

access across Wonder Ranch has been controlled by and was at "the will of" the

owners of Wonder Ranch property.  Exhs. 12, 13.  Lindsey's successor, Mark

Petroni, also recognized that access across Wonder Ranch has been as a result of a

"gentleman's agreement" wherein the owners of Wonder Ranch have

accommodated Forest Service and public use of the trail without an easement. Exh.

14.  To the extent PLWA members have used the trail, as alleged, since at least the

1970s signs have been posted on the Wonder Ranch property notifying users that

the trail crossed private property and requested users to stay on the trail.  *See,*

*supra,* pp. 5-7.

Moreover, on October 2, 2014, the Madisonian newspaper published an

open letter from Wonder Ranch providing notice to the Madison Valley

community, including PLWA members, of this legal action and the reasons for the litigation.  Exh. 25.  Moreover, PLWA member Lindsey has had actual knowledge of this lawsuit since at least May 11, 2015, when his deposition was noticed by Defendants.  Exh. 26 (Lindsey Deposition Notice).

Further, PLWA expressly acknowledges it "was generally aware that the Indian Creek trail was the subject of a dispute over access rights."  Doc. 24-1 at 5. Despite acknowledging its awareness of the pending litigation, PLWA failed to seek intervention in this action until fourteen months after Wonder Ranch filed its Complaint, and over eight months since the Forest Service filed its counterclaims asserting a public prescriptive easement.

The Ninth Circuit is "<u>reluctant to allow intervention when the applicant appears to have been aware of the litigation but has delayed unduly seeking to intervene</u>."  *Wilson*, 131 F.3d at 1304 (emphasis added).  PLWA should not be rewarded for its dilatory action, particularly when its motion to intervene was solicited at the behest of the Forest Service and will prejudice Wonder Ranch.

Even more egregiously, PLWA did not even attempt to explain why it failed to intervene as soon as it became aware of this litigation.  The Ninth Circuit has denied motions to intervene where proposed intervenors failed to explain why they did not intervene earlier.  *See Marsh*, 194 F.3d at 1052 (motion to intervene denied when party "tendered no explanation as to why it took them well over a year to

16

apply for intervention"); *see also Blaine Cnty.*, 37 F. App'x at 278 (motions to intervene properly denied when parties "fail to offer sufficient explanation for their delay in filing their motion to intervene"); *see also Wilson*, 131 F.3d at 1304 (proposed intervenor's "failure adequately to explain . . . the reason for its delay" was more damaging than the delay itself).  Because PLWA does not even attempt to explain why it filed its motion to intervene fourteen months after Wonder Ranch filed its complaint, PLWA's motion should be denied as untimely.

**III.   PLWA Cannot Satisfy the Requirements of F.R.Civ.P. 24(a), Which Are Necessary to Intervene as a Matter of Right in this Action.**

To intervene as a matter of right under F.R.Civ.P. 24(a), an applicant must demonstrate that: "(1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest."  *Alisal Water Corp.*, 370 F.3d at 919.

PLWA cannot satisfy any of these requirements.  The Ninth Circuit has instructed that "failure to satisfy any one of the requirements is fatal to the application" and that courts "need not reach the remaining elements if one of the elements is not satisfied."  *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

A.   <u>PLWA Does Not Have a Significant Protectable Interest in this Action Because Resolution of the Action Will Not Actually Affect PLWA's Interests.</u>

In the Ninth Circuit, an applicant has a significant protectable interest in an action if: "(1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 398 (9th Cir. 2002). PLWA satisfies the "relationship" requirement "only if the resolution of [Wonder Ranch's] claims <u>actually will affect</u> [PLWA]." *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003), as amended (May 13, 2003) (emphasis added).  In analyzing whether PLWA has made such a showing, the Court engages in a "practical, threshold inquiry," and "no specific legal or equitable interest need be established."  *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897-98 (9th Cir. 2011).

Wonder Ranch does not dispute that PLWA has an "interest in preserving and protecting public access to public lands in Montana."  Doc. 24, p. 8.  In fact, Wonder Ranch shares this interest.  Exh. 25; Exh. 6 (Hudson dep., pp. 139, 226).  However, PLWA cannot satisfy the first prong necessary to establish intervention as a matter of right because there is no practical relationship between PLWA's asserted interest and resolution of Wonder Ranch's claims.

PLWA's interest in protecting public access across Wonder Ranch will not actually be affected by this litigation, regardless of the outcome.  At its essence, this case is about clearing legal title to the Wonder Ranch Property.  If Wonder Ranch succeeds, the Forest Service's Statement of Interest will be invalidated, but the public will still have permission to cross through Wonder Ranch.  Exh. 6 (Hudson dep., pp. 56, 99); Exh. 18 (E. King dep., p. 33); Exh. 21 (FP. King dep., p. 45).  If the Forest Service succeeds, it will have established a public prescriptive easement across Wonder Ranch.  Doc. 19.  Thus, regardless of the outcome of this litigation, the public will continue to be able to cross Wonder Ranch.

Moreover, even if public access across Wonder Ranch were closed, which it will not be, there are numerous other public access routes into the surrounding public lands.  *See* Exh. 27 (Trailhead Map).  For example, the Trail Fork of Bear Creek, the Middle Fork of Bear Creek, the North Fork of Bear Creek, Cache Creek, and the Taylor Fork trails all provide public access to the wilderness that is also accessed via Indian Creek.  *Id*.; Exh. 28 (Kevin Suzuki dep., pp. 50-54); Exh. 29 (Jonathan Klein dep., p. 53); Exh. 30 (John Dochnal dep., pp. 18, 28-29).  Thus, as a result of this lawsuit, public access to the wilderness and Indian Creek will not be lost and there will be no "irreparable harm" to PLWA members, as alleged.  *See* Doc. 24-1, pp. 3, 6.

19

### B. Because PLWA Does Not Have a Significant Protectable Interest in this Litigation, Disposition of this Action Will Not, as a Practical Matter, Impair PLWA's Ability to Protect Its Asserted Interest.

To satisfy the second requirement of intervention as a matter of right, PLWA must establish that its ability to protect its interests "would be substantially affected in a practical sense by the determination made in an action." *Citizens for Balanced Use*, 647 F.3d at 898. The preceding analysis demonstrates that PLWA's members will not be affected in a practical sense by this litigation because Wonder Ranch will continue to permit and accommodate public access across its property and because numerous alternate routes of public access to the National Forest currently exist. For these reasons, PLWA cannot establish it has a significant protectable interest in this dispute that it would be unable to protect.

### C. PLWA's Motion to Intervene as a Matter of Right Is Untimely.

"A timely motion is required for the granting of intervention, whether as a matter of right or permissively." *Allen*, 787 F.3d at 1222. Wonder Ranch incorporates its timeliness analysis, *supra*, by reference and asserts that PLWA's motion to intervene as a matter of right is untimely.

### D. PLWA's Motion to Intervene Should Be Denied Because PLWA Failed to Rebut the Presumption that the Forest Service Will Adequately Represent PLWA's Interests.

PLWA engages in a perfunctory analysis of why the Forest Service does not adequately represent its interests. PLWA's analysis is premised on its speculation

that the Forest Service—which is seeking a public prescriptive easement across Wonder Ranch—may not adequately represent PLWA's interests" in likewise asserting a public prescriptive easement across Wonder Ranch.  *See* Doc. 19, ¶ 17; *see also* Doc. 24, p. 11.  The Court should reject this dubious assertion.

PLWA incorrectly assumes it satisfied its burden of establishing inadequate representation by the Forest Service because that duty is "minimal."  Doc. 24, p. 11.  The Ninth Circuit instructs that "although the burden of establishing inadequacy of representation may be minimal, the requirement is not without teeth."  *Prete v. Bradbury*, 438 F.3d 949, 956 (9th Cir. 2006) (emphasis added).  That is especially true when, as here, the government is pursuing the same public interest as PLWA.  *See, e.g., Arakaki*, 324 F.3d at 1086 (affirming denial of motion to intervene because private party failed to overcome presumption that government adequately represented private party's interests).

As an intervening party, PLWA "bears the burden of demonstrating that the existing parties may not adequately represent its interest."  *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001).  The "most important factor" in determining whether PLWA is adequately represented by the Forest Service is "how [PLWA's] interest compares with the interests of the [Forest Service]."  *Perry*, 587 F.3d at 950-51.  "Where the party and the proposed intervenor share the same 'ultimate objective,' a presumption of adequacy of representation applies."

*Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011).

A comparison of the Forest Service's counterclaim and PLWA's proposed counterclaim establishes that the Forest Service and PLWA share the same ultimate objective.  In fact, PLWA largely copied the Forest Service's counterclaim word-for-word.  Using identical language, both PLWA and the Forest Service assert that the "United States has acquired a prescriptive easement over Wonder Ranch's property by virtue of its open, notorious, adverse, continuous and uninterrupted use for the complete statutory period, by employees acting within the scope of their employment, by permittees, and by the general public."  *Compare* Doc. 19, ¶ 17, *with* Doc. 24-1, p. 24, ¶ 18 (emphasis added).  Furthermore, PLWA's prayer for relief is nearly identical to the Forest Service's prayer for relief.  *Compare* Doc. 19, pp. 9-10, ¶¶ A-D, *with* Doc. 24-1, pp. 25-26, ¶¶ A-D. Both PLWA and the Forest Service assert the public has a prescriptive easement over Wonder Ranch.  *Id*.  Because PLWA is asserting a general public right, it is unlikely that PLWA can establish inadequate representation.  *See Forest Conservation Council v. U.S. Forest Serv*., 66 F.3d 1489, 1499 (9th Cir. 1995) ("inadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public").

Furthermore, because PLWA and the Forest Service are seeking the same ultimate objective—a public easement across Wonder Ranch—"a presumption of adequacy of representation" arises as a matter of law. *Geithner*, 644 F.3d at 841. To rebut that presumption, PLWA is required to present "a compelling showing . . . to demonstrate inadequate representation." *Arakaki*, 324 F.3d at 1086. A presumption of adequate representation also arises by virtue of the fact that the Forest Service is a government agency. "There is a presumption that the government will adequately represent a party's interests." *Low v. Altus Fin. S.A.*, 44 F. App'x 282, 284-85 (9th Cir. 2002). The Ninth Circuit "encourage[s]" that presumption. *Allen*, 787 F.3d at 1222. "In the absence of a 'very compelling showing to the contrary,' it will be presumed that [the government] adequately represents its citizens when the applicant shares the same interest." *Arakaki*, 324 F.3d at 1086; *see also Prete*, 438 F.3d at 957-59.

In order to establish a "very compelling showing" of inadequate government representation, the PLWA "must demonstrate a likelihood that the government will abandon or concede a potentially meritorious" position. *California ex rel. Lockyer v. United States*, 450 F.3d 436, 444 (9th Cir. 2006). PLWA has failed to do so and, instead, has engaged in conclusory speculation that the Forest Service "may not adequately represent PLWA's interests." Doc. 24, p. 11. The Ninth Circuit, however, recognizes that "vague speculation falls far short of a 'very compelling

23

showing.'" *Dep't of Fair Employment & Hous. v. Lucent Technologies, Inc.*, 642

F.3d 728, 740-41 (9th Cir. 2011).

PLWA also suggests the Forest Service might not assert the public's

prescriptive easement rights in the exact same manner that PLWA would.  Doc. 24,

pp. 11-12.  The Ninth Circuit has rejected that argument, holding that "mere

differences in litigation strategy are not enough to justify intervention as a matter

of right."  *Perry*, 587 F.3d at 954-55.

Finally, PLWA suggests that it will offer important evidence and expertise

"that the Forest Service may be unable to present."  Doc. 24, p. 12.  The Ninth

Circuit has determined that "such a reason is insufficient to provide the

'compelling showing' necessary to overcome the presumption of adequate

representation" and that the Forest Service instead should obtain such information

"through discovery (*e.g.*, by calling [PLWA] to supply evidence)."  *Prete*, 438

F.3d at 958-59.

Because PLWA failed to make a "very compelling showing" that the Forest

Service does not adequately represent its interests, PLWA failed to "overcome the

presumption that the [Forest Service] is adequately protecting their interests."  *City

of Los Angeles, Cal.*, 288 F.3d at 402.  Thus, PLWA's motion to intervene should

be denied as a matter of law.  *Geithner*, 644 F.3d at 841.

24

Furthermore, PLWA's interests are protected by Wonder Ranch, which has never sought to close the trail, will not block public access regardless of the outcome of this litigation, and has even attempted to facilitate additional public access to South Indian Creek.  Exh. 6 (Hudson dep., pp. 56, 99); Exh. 18 (E. King dep., p. 33); Exh. 21 (FP. King dep., p. 45).  Wonder Ranch's actions and words underscore its belief that public access up Indian Creek is important and should continue.  Exh. 6 (Hudson dep., pp. 139, 226); Exh. 25.  PLWA should consider the broader implications of its involvement in this litigation.  If a landowner like Wonder Ranch is punished for permitting public use across private property, it would chill Montana landowners' willingness to accommodate public access across private lands.  Contrary to PLWA's mission, this would result in more locked gates, more no trespassing signs, and reduced public access across the State of Montana.

## IV.   PLWA Cannot Satisfy the Requirements of F.R.Civ.P. 24(b), Which Are Necessary for Permissive Intervention.

A district court "may grant permissive intervention . . . where the applicant shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common."  *Perry*, 587 F.3d at 955.  However, "even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention."  *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir.

25

1998) (emphasis added); *see also Perry*, 630 F.3d at 905-06. "An order denying permissive intervention is also not appealable" unless the district court abused its broad discretion. *Hawaii-Pac. Venture Capital Corp. v. Rothbard*, 564 F.2d 1343, 1346 (9th Cir. 1977).

    A.   <u>The Court Should Deny PLWA's Motion For Permissive Intervention</u>
            <u>Even if the Court Determines PLWA Met All Requirements for</u>
            <u>Permissive Intervention.</u>

As noted, the Court has discretion to deny PLWA's motion for permissive intervention even if PLWA satisfies the threshold requirements. *Donnelly*, 159 F.3d at 412. In exercising that discretion, the Court "must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Id*. Granting PLWA's motion would prejudice Wonder Ranch because the existing Scheduling Order would need to be vacated to allow for additional discovery, Wonder Ranch would be forced to expend additional time and resources, trial will likely by delayed, and the cloud on Wonder Ranch's title would continue unnecessarily. The Ninth Circuit has denied permissive intervention that "might very well delay the proceedings" due to the "need to conduct discovery on substantially similar issues." *Perry*, 587 F.3d at 955.

Additionally, the Court may consider other relevant factors such as "the nature and extent of the intervenor's interest," the "legal position they seek to advance" and "whether the intervenors' interests are adequately represented by

other parties." *Spangler*, 552 F.2d at 1329.  The Ninth Circuit has denied

permissive intervention "where the government party to the case made the same

arguments as the [proposed intervenor], and the government party would

adequately represent the intervenors'" interests.  *Perry*, 587 F.3d at 955 (citing

*United States ex rel. Richards v. De Leon Guerrero*, 4 F.3d 749, 756 (9th

Cir.1993)).  Because the Forest Service will adequately represent PLWA's

interests, PLWA's motion for permissive intervention should be denied.  *Id.*

   B.   The Court Should Deny PLWA's Motion for Permissive Intervention
        Because PLWA Failed to Allege Independent Jurisdictional Grounds.

   The Ninth Circuit has denied motions for permissive intervention when a

party "fails to satisfy the first prong of the permissive intervention standard, since

it asserts no independent basis for jurisdiction."  *Wilson*, 131 F.3d at 1308.  In its

motion for permissive intervention, PLWA did not assert an *independent* basis for

jurisdiction.  Instead, PLWA's claim of jurisdiction is dependent on the Forest

Service's involvement in this case.  *See* PLWA Motion, p. 13 ("the Court has

jurisdiction . . . because this action involves property in which the United States

claims an interest").  Excluding the United States' interests in this litigation would

deprive the District Court of original jurisdiction under federal law, *see* 28 U.S.C.

§§ 1330-1340, and PLWA would be unable to remove this action to federal court

pursuant to 28 U.S.C. § 1441, because PLWA cannot assert diversity of citizenship

between PLWA and Wonder Ranch.  Because PLWA has not asserted, and in fact

27

cannot assert, an independent basis for jurisdiction, PLWA's motion for permissive intervention should be denied.

    C.   <u>The Court Should Deny PLWA's Motion for Permissive Intervention Because it Is Untimely.</u>

"A finding of untimeliness defeats a motion for permissive intervention." *Wilson*, 131 F.3d at 1308.  In the context of permissive intervention, the Ninth Circuit "analyze[s] the timeliness element more strictly[.]" *Id*.  Wonder Ranch incorporates its timeliness analysis, *supra*, by reference and asserts that PLWA's motion to permissively intervene is untimely.

## CONCLUSION

PLWA's motion to intervene should be denied because PLWA has failed to establish any of the elements necessary to establish intervention as a matter of right or permissive intervention.  "Failure to satisfy any one of the requirements is fatal to the application," and, therefore, the Court should deny PLWA's motion.  *See Perry*, 587 F.3d at 950.

Dated this 2nd day of November, 2015.


  //

  //

  //

BLOOMQUIST LAW FIRM, P.C.


By:  /s/ John Bloomquist
JOHN BLOOMQUIST
RACHEL A. KINKIE
Diamond Block, Suite 100
44 West 6th Avenue
P.O. Box 799
Helena, MT 59624-0799


CROWLEY FLECK PLLP


By:  /s/ Gregory F. Dorrington
CHRISTOPHER C. STONEBACK
GREGORY F. DORRINGTON
500 Transwestern Plaza II
490 North 31ST Street
P.O. Box 2529
Billings, MT  59103-2529

*Attorneys for Wonder Ranch, LLC*

29

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(d)(2)(E), I certify that this response brief contains 6,481 words, as calculated by Microsoft Word for Windows, excluding the caption, certificates of service and compliance, table of contents and authorities, and exhibit index.

/s/ Gregory F. Dorrington
Gregory F. Dorrington
Crowley Fleck PLLP
P.O. Box 2529
Billings, MT 59103-2529
*Attorneys for Wonder Ranch, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing document was served upon the following counsel of record, by the means designated below, this 2nd day of November 2015:

[ ] U.S. Mail                  Mark Steger Smith
[ ] FedEx                    Assistant U.S. Attorney
[ ] Hand-Delivery        U.S. Attorney's Office
[ ] Facsimile               2601 Second Avenue North, Suite 3200
[ ] Email                    Billings, MT  59101
[x] ECF Electronic filing

[ ] U.S. Mail                  Melissa A. Hornbein
[ ] FedEx                    Assistant U.S. Attorney
[ ] Hand-Delivery         U.S. Attorney's Office
[ ] Facsimile               901 Front St., Ste 1100
[ ] Email                    Helena, MT  59626
[x] ECF Electronic filing

[ ] U.S. Mail                  J. Devlan Geddes
[ ] FedEx                    Kyle W. Nelson
[ ] Hand-Delivery         Paul S. Burdett
[ ] Facsimile               GOETZ, BALDWIN & GEDDES, P.C.
[ ] Email                    P.O. Box 6580
[x] ECF Electronic filing     Bozeman, MT  59771-6580

<div style="margin-left:40%">

/s/ Gregory F. Dorrington
Gregory F. Dorrington
Crowley Fleck PLLP
P.O. Box 2529
Billings, MT 59103-2529
*Attorneys for Wonder Ranch, LLC*

</div>

31